AMERICAN EMPLOYERS INSURANCE COMPANY v. W. E. HUDDLESTON, ET UX.

No. 6028.   Decided May 2, 1934.
(70 S. W., 2d Series, 696.)

*W. B. Handley* and *D. H. Hardy,* both of Dallas, for plaintiff in error.

The contract invested the architect with power and authority to approve or disapprove and enforce correction of defects, with power to make final certificate on the completion of the work and full performance of the contract, and when such architect issues such final estimates and certificate on presentation of same the owners made final full payment of the contract price, or the full balance thereof, the surety on the contractor's bond is released from liability for after discovered defects. Ryan v. Morton, 65 Texas, 258; Bullard v. Norton, 107 Texas, 571, 182 S. W., 668; Boettler v. Tendick, 73 Texas, 488; Kilgore v. Northwest Texas Baptist Ed. Co., 89 Texas, 468; Harrell v. City of Lufkin, 280 S. W., 174; Hewitt v. Buchanan, 4 S. W. (2d), 174; Fort Worth Ind. Sch. Dist. v. Aetna Cas. & Sur. Co., 48 Fed. (2d), 1.

*Harris & Watkins,* of Galveston, for defendants in error.

As all payments were made in accordance with the requirements of the contract, without any knowledge on the part of the owner or architect of any defective workmanship and materials, there was no violations of or change in the terms of the contract, and the surety was not released. City of Galveston v. Devlin, 84 Texas, 319, 19 S. W., 395; Employers Cas. Co. v. Irene Ind. Sch. Dist., 286 S. W., 539; Galveston, ·H. & S. A. Ry.

Co. v. Walker, 110 Texas, 286, 219 S. W., 815; Burnett v. Atteberry, 105 Texas, 119, 145 S. W., 582.

Mr. Judge RYAN delivered the opinion of the Commission of Appeals, Section B.

Defendants in error brought this suit against the contractor and surety on his builder's bond to recover damages for faulty workmanship and material, appearing after final payment, in the construction of a residence for defendants in error, in the City of Galveston.

Judgment, based upon a jury's findings in answer to special issues, was rendered for defendants in error in the sum of $9000.00, with interest at the rate of 6% per annum from October 27, 1927, to date of judgment (January 8, 1930), amounting to $1185.00, aggregating $10185.00, against J. W. Woodruff, contractor, as principal, and American Employers Insurance Company as surety. This judgment was affirmed by the Court of Civil Appeals. 39 S. .W. (2d), 952.

After a thorough investigation of the very voluminous record and a careful consideration of the case we have reached the conclusion that the judgments of the lower courts should be affirmed.

As correctly stated by the Court of Civil Appeals, what was sued for and recovered, was damages—measured by the difference between the value of the work as actually done and what would have been its value if it had been done right—resulting to the plaintiffs from the use of such faulty workmanship and matrials as necessitated the reconstruction of the building rather than its repair, none of which either appeared, or were or could have been discovered by the exercise of reasonable diligence on the architect's part, until after final payment of the contract price, under a building contract specifically making the contractor liable in such circumstances in these express provisions:—

"Art. 20. *Correction of Work After Final Payment.* Neither the final certificate (meaning that of the architect) nor payment nor any provision in the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship, and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion; * * *."

"Art. 25. *Certificates of payments.* * * * No certificate issued nor payment made to the contractor, nor partial or entire use or occupancy of the work by the owner, shall be an

acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the owner, other than those arising from unsettled liens, from faulty work appearing after final payment or from requirements of the specifications, and of all claims by the contractor, except those previously made and still unsettled."

That claims for faulty work or materials were not foreclosed with the final payment, and such claims are differentiated from other character of claims, is again manifested by Art. 31 of the contract, reading as follows:—

"Art 31. *Damages.* If either party to this contract should neglect of the other party or of any one employed by him, then ing, as constructed and as of the date of the architect's final he shall be reimbursed by the other party for such damage.

"Claims under this clause shall be made in writing to the party liable within a reasonable time of the first observance of such damage and not later than the time of final payment, *except as expressly stipulated otherwise in the case of faulty work or materials,* and shall be adjudged by agreement or arbitration."

The jury found, that the building was not constructed in full compliance with the contract; that as it existed on the date of the architect's final certificate, towit:—October 27, 1927, it could not have been repaired or worked over so as to make it fully conform to the requirements of the contract without impairing the structure as a whole and without doing material damage to other parts of the building in tearing down and reconstructing; that the fair and reasonable value of the building, as constructed and as of the date of the architect's final certificate was $11,000.00, and its fair and reasonable value, then, had same been constructed in full compliance with the contract, would have been $20,000.00; that the building was not constructed in substantial compliance with the contract; that neither the concrete foundation footings, nor the stucco walls, nor the window frames and door frames, were constructed in accordance with the contract, that no authorization by the architect was given to so construct said items contrary to the provisions of the contract; that the defects complained of in the concrete foundation footings, in the stucco walls, in papering the interior of the house, in the varnishing and painting of the floors and other interior wood work, in the window and door frames, in the roof, in the walls of the building, could not have been discovered by the architect during the period of

construction, by the exercise by him of reasonable diligence or ordinary care.

The bond executed by the Insurance Company, as surety, is conditioned that if Woodruff, the contractor, as principal, "shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of a failure so to do, and shall fully reimburse and repay the owner all outlay and expenses which the owner may incur in making good any such default, and shall pay all persons who have contracts with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect. Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this bond after twelve months from the day on which the final payment under the contract falls due." It was also provided that any alterations made in the terms of or in the work to be done under the contract, or the giving by the owner of any extension of time for the performance of the contract or any other forbearance on the part of either the owner or the contractor to the other, shall not in any way release the principal or surety on such bond from liability thereunder, and notice to the surety of any such alteration, extension or forbearance is expressly waived.

We have therefore the case of a building not constructed, as to workmanship and material, according to contract, the defects in which were not known to the architect or owner, during construction, and discovered only after the owner had paid strictly according to the contract, in full. Simply stated, the owner paid for something which he did not get in the way of workmanship and material, and which he was entitled to under the contract. We think he is entitled to recover and is not estopped because, relying on the architect's certificate, he made the final payment; this because of the terms of the contract itself, above set forth.

Analogous to this case is Mercantile Trust Co. v. Hensey, 205 U. S., 298, where Mr. Justice Pitney concluded that the architect's final certificate is not a bar to recovery by the owner for defects appearing after final payment under a contract expressly making the contractor liable therefor.

Application for writ of error was granted on the first assignment in the application, to the effect that the surety was released because of alleged over payments made by the owner in violation of the retainage clause of the contract. The rec-

ord shows that the owner during progress of the work made payments only upon the architect's certificates and only to the extent of 85% of his estimate, exactly as provided in the contract and made the final payment including the retainage, only upon the architect's final certificate.

It seems to be the contention of plaintiff in error, that over-payments consisted in the architect and owner not deducting for faulty work or bad materials.

Plaintiff in error says "these said installments were of and for the total and actual work and materials incorporated in the construction without differentiation between any faulty work or materials and such as comply with the requirements of the contract; in none of these estimates and in none of these payments did the architect or the owner deduct anything for faulty work or bad materials. * * * The five installment estimates of the architect and the five installment payments by the owner included this faulty work and materials."

Such contention is without merit. There is no evidence of fraud or bad faith and the jury found the architect could not have discovered the defects by the exercise of ordinary care and reasonable diligence. Under the circumstances the certificates were conclusive as to payments and the owner acted in the utmost good faith and in strict compliance with the contract in making them.

The cases cited by plaintiff in error are not in point, under the contract, bond and facts of this case. In them, payments were made in violation of the method prescribed in the contract. Thus, in Ft. Worth Ind. S. D. v. Aetna Casualty & Surety Co., 48 Fed. (2), 1, cited by plaintiff in error, while the bond there considered was similar to that in the present case, the school board paid out part of the retainage before completion of the building and without exacting of the contractor receipts or affidavits showing payment of all bills for labor and material; in Fidelity & Deposit Co. v. Kelsay Lumber Co., 33 S. W. (2d), 731, the owner and contractor made a separate agreement (without the surety's knowledge or consent) with the lumber company, to hold back a sufficient sum of the contract price and pay the same direct to the lumber company upon completion of the building, for the material furnished by it, thus relieving the contractor of the duty to apply any portion of the progress payments paid him under the original contract, to the lumber company in payment for material furnished by it, although the installments received by him included the value of 75% of such material. Clearly, we think, those cases are not authority here.

The owner had the right—it was his duty under the contract—to pay the architect's certificates which were conclusive as to everything except faulty workmanship and materials appearing within one year from the date of substantial completion, in the absence of fraud, misconduct or such gross mistake as would imply bad faith on the part of the architect, none of which was shown. Kilgore v. Baptist Educational Society, 89 Texas, 465; Williams v. Baldwin (Com. App.), 228 S. W., 554.

We agree with the Court of Civil Appeals on all other questions as decided by it and deem unnecessary the discussion in detail, in this opinion, of the remaining thirty assignments presented in the application for writ of error, and therefore recommend that the judgments of the trial court and Court of Civil appeals be affirmed.

Adopted by the Supreme Court May 2, 1934.